## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAUL AVALOS,

        Plaintiff,

vs.                                       No. CIV 22-0119 JB/KBM

R. GLORIA, Major; FNU TRUJILLO,
Lieutenant; FNU GENTRY, Warden,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Complaint for Violation of Civil Rights, filed February 18, 2022 (Doc. 1)("Complaint").  Plaintiff Raul Avalos is a State prisoner who is currently incarcerated at the Northeast New Mexico Correctional Facility in Clayton, New Mexico. See Complaint ¶ 1, at 2.  He appears pro se and is proceeding in forma pauperis.  See Order Granting *In Forma Pauperis* Application, filed May 17, 2022 (Doc. 9).  Avalos alleges that prison officials at the Northeast New Mexico Correctional Facility violated his federal statutory and constitutional rights by threatening to tell the general-population inmates that he was a child abuser.  See Complaint ¶ II.D. at 4.  He also seeks to bring claims arising under State tort law. See Complaint ¶ IV, at 5.  Having carefully reviewed the pleadings under 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses the federal claims and grants leave to file an amended complaint.  Additionally, the Court concludes that Avalos' State tort claims are not viable, and, therefore, the Court will dismiss them.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are from the Complaint.  For the limited purpose of its Memorandum Opinion and Order, the Court assumes that the Complaint's allegations are true.  Defendant FNU

Gentry is the Warden at the Northeast New Mexico Correctional Facility.   <u>See</u> Complaint ¶ I.B, at 2.   Defendant R. Gloria is a Major, and Defendant Trujillo is a Lieutenant, at the Northeast New Mexico Correctional Facility.   <u>See</u> Complaint ¶ I.B, at 2.   Avalos was an inmate at the Northeast New Mexico Correctional Facility when he filed the Complaint.   <u>See</u> Complaint ¶ 1, at 2.

Avalos alleges that, in January, 2022, Gloria and Trujillo threatened to inform the general inmate population that Avalos is a child abuser who deserves to be beaten and/or killed.   <u>See</u> Complaint ¶ II.D. at 4.   He alleges that Gloria and Trujillo put his life in jeopardy while they "blacklisted" and "blackmailed" him, using his criminal charges as leverage.   Complaint ¶ IV, at 4.   Avalos appears to allege that Gloria and Trujillo engaged in this conduct, because Avalos asked others to pause their conversation and remain silent while Avalos prayed.   <u>See</u> Complaint at 13.   Additionally, Avalos alleges that Gloria and Trujillo's verbal threats "energized [him] with 'schiz[o]phrenic' feelings," but that the mental health staff ignored Avalos.   Complaint ¶ V, at 5.   Avalos alleges that Gloria and Trujillo ordered mental health staff not to consult him.   <u>See</u> Complaint ¶ V, at 5.   Avalos also appears to allege that he was subjected to corporal punishment in retaliation for filing grievances about Gloria and Trujillo's threats.   <u>See</u> Complaint ¶ VII.E, at 7.   Avalos seeks damages for violations of his federal constitutional rights under 42 U.S.C. § 1983.   <u>See</u> Complaint ¶ II, at 3.   He also seeks relief under the Americans with Disabilities Act 42 U.S.C. § 12101, et seq. ("ADA")*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 701, et seq. <u>See</u> Complaint ¶ II, at 3.   Finally, Avalos seeks relief under the tort theories of negligence, assault and battery, and intentional infliction of emotional distress.   <u>See</u> Complaint ¶ II, at 3.

## <u>LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS</u>

Section 1915A of Title 28 of the United States Code requires a court to conduct a sua sponte review of all civil complaints where a plaintiff is incarcerated and seeks relief from a

government official.  See 28 U.S.C. § 1915A.  The Court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The Court also may dismiss a complaint sua sponte under rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is

insufficient.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (footnote omitted).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."   Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."   Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).   The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, a pro se prisoner's pleadings "are to be construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers."   Hall v. Bellmon, 935 F.2d at 1110.   If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements."   Hall v. Bellmon, 935 F.2d at 1110.   At the same time, however, pro se parties must file a legible pleading that complies with rule 8.   That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]"   Fed. R. Civ. P. 8(a).

## LAW REGARDING § 1983

Section 1983 is a vehicle for vindicating substantive rights against State officials under the United States Constitution.   See Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Albright v. Oliver, 510 U.S. 266, 271 (1994)(noting that § 1983 does not create substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution); Bolden v. City of Topeka, 441 F.3d 1129 (10th Cir. 2006).   Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.   Only a "person" may be held liable under § 1983.   42 U.S.C. § 1983.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by State government officials acting under color of State law that result in a deprivation of constitutional rights.   See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).   There must be a connection between official conduct and violation of a constitutional right.   Conduct that is not connected to a constitutional violation is not actionable under § 1983.   See Trask v. Franco, 446

F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil-rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for co-workers or subordinates' actions.   See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).   A plaintiff must plead that each government official, through the official's individual actions, has violated the Constitution.   See Ashcroft v. Iqbal, 556 U.S. at 676.   To succeed under § 1983, a plaintiff must allege an identified official's personal involvement in the alleged constitutional violation.   See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).   In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her."   Robbins v. Oklahoma, 519 F.3d at 1249-50.   Generalized statements that the defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, are not sufficient to state any claim for relief.   See Robbins v. Oklahoma, 519 F.3d at 1249-50.

Injunctive relief is available under § 1983.   A prisoner plaintiff may not maintain, however, § 1983 claims for temporary, preliminary, or permanent injunctive relief based on conditions of incarceration if the plaintiff is no longer housed at the facility.   See Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997); White v. State, 82 F.3d 364, 366 (10th Cir. 1996). Once a prisoner is released from the prison facility, injunctive relief would have no effect on defendants' behavior and, therefore, injunctive relief is moot.   See Green v. Branson, 108 F.3d at 1300; Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010).   The rule that injunctive relief becomes moot applies both where the prisoner is released from prison and where the prisoner is transferred to a different prison facility.   See Love v. Summit County, 776 F.2d 908, 910 n.4, 912 (10th Cir. 1985).

**LAW REGARDING FIRST AMENDMENT RETALIATION CLAIMS**

Prison officials may not retaliate against or harass inmates because of the inmate's exercise of his or her constitutional rights, including filing internal prison grievances or initiating lawsuits. See Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006); Smith v. Maschner, 899 F.2d 940, 947-48 (10th Cir. 1990).   The elements of a retaliation claim are: (i) the plaintiff engaged in constitutionally protected activity; (ii) the defendant responded by causing an injury that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (iii) the defendant's action was substantially motivated as a response to the plaintiff's protected activity. Gee v. Pacheco, 627 F.3d 1178, 1182, 1195 (10th Cir. 2010)(quoting Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007)).   An inmate is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity."   Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).   A plaintiff therefore must allege specific facts showing that, "but for the retaliatory motive, the incidents to which he refers, including the disciplinary action would not have taken place." Peterson v. Shanks, 149 F.3d at 1144.

**LAW REGARDING EIGHTH AMENDMENT CLAIMS**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."   Adkins v. Rodriguez, 59 F.3d at 1037 (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).   In the context of alleged deprivations of certain necessities, prison officials are liable for violating an inmate's right to humane conditions of confinement where two requirements are met.   First, the deprivation alleged must be "objectively, 'sufficiently serious,'" resulting in a denial of the "minimal civilized measure of life's necessities."   Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quoting Wilson v. Seiter, 511

U.S. 294, 298 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   Second, the officer must exhibit "'deliberate indifference to the inmate's health or safety.'" Adkins v. Rodriguez, 59 F.3d at 1037 (quoting Farmer v. Brennan, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. at 298)). Deliberate indifference requires that the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."   Adkins v. Rodriguez, 59 F.3d at 1037 (quoting Farmer v. Brennan, 511 U.S. at 847).

### LAW REGARDING SECTION 504 OF THE REHABILITATION ACT

Section 504 prohibits discrimination on the basis of ability in programs that receive federal funding.   See Rehabilitation Act § 504.   "To establish a prima facie claim under § 504, a plaintiff must demonstrate that (1) plaintiff is handicapped under the [Rehabilitation] Act; (2) he is otherwise qualified to participate in the program [at issue]; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff based upon a disability." Havens v. Colo. Dep't of Corr., 897 F.3d 1250, 1262-63 (10th Cir. 2018).   "The Supreme Court has recognized that § 504 is intended to ensure that an otherwise qualified handicapped individual is provided with meaningful access to the benefit that the grantee offers.   To assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." Havens v. Colo. Dep't of Corr., 897 F.3d at 1263 (citing Alexander v. Choate, 469 U.S. 287, 301 (1985)).   "Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance.   The Act does not, however, guarantee the handicapped equal results from participation in such programs and services."   Havens v. Colo. Dep't of Corr., 897 F.3d at 1263 (citing Alexander v. Choate, 469 U.S. at 304).   "The plaintiff bears the burden of establishing that the defendant 'discriminated against the handicapped' in the offered program or service by failing to provide meaningful access

to the program and service, 'such that the need for a remedial interactive process aimed at finding a reasonable accommodation was triggered.'" <u>Havens v. Colo. Dep't of Corr.</u>, 897 F.3d at 1263 (quoting <u>Barber ex rel. Barber v. Colo. Dep't of Revenue</u>, 562 F.3d 1222, 1233 (10th Cir. 2009)(Gorsuch, J., concurring)).

In the context § 504 of the Rehabilitation Act, the term "disability" has meaning as the ADA gives the term.   <u>See</u> 42 U.S.C. § 12102; 29 U.S.C § 705(9)(B).   The ADA defines disability as

    (A)    a physical or mental impairment that substantially limits one or more major life activities of such individual;

    (B)    a record of such an impairment; or

    (C)    being regarded as having such an impairment

42 U.S.C. § 12102.   In construing the scope of liability under § 504 of the Rehabilitation Act, the Court may reference cases decided under Title II of the ADA.   <u>See</u> <u>Havens v. Colo. Dep't of Corr.</u>, 897 F.3d at 1263.   "The ADA enlarges the scope of the Rehabilitation Act to cover private employers, but the legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act to be incorporated by reference when interpreting the ADA."   <u>Nielsen v. Moroni Feed Co.</u>, 162 F.3d 604, 608 n.7 (10th Cir. 1998).

"To recover compensatory damages under § 504, a plaintiff must establish that the agency's discrimination was intentional."   <u>Barber ex rel. Barber v. Colo. Dep't of Revenue</u>, 562 F.3d at 1228.   "Deliberate indifference is sufficient to satisfy the intentional-discrimination requirement for compensatory damages under § 504: 'intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'"   <u>Havens v. Colo. Dep't of</u>

Corr., 897 F.3d at 1264 (quoting <u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1153 (10th Cir. 1999)).   To satisfy the deliberate indifference standard, a plaintiff must show "(1) [that the defendant had] 'knowledge that a harm to a federally protected right [was] substantially likely,' and (2) 'a failure to act upon that likelihood.'"   <u>Havens v. Colo. Dep't of Corr.</u>, 897 F.3d at 1264 (quoting <u>Barber ex rel. Barber v. Colo. Dep't of Revenue</u>, 562 F.3d at 1229).   "As to the second prong, 'failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness.'"   <u>Havens v. Colo. Dep't of Corr.</u>, 897 F.3d at 1264 (quoting <u>Barber ex rel. Barber v. Colo. Dep't of Revenue</u>, 562 F.3d at 1229).

## <u>LAW REGARDING ADA CLAIMS</u>

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   Title II of the ADA applies to inmates in State prisons.   <u>See</u> <u>Penn. Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 209 (1998).   To state a claim under Title II of the ADA, a "plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."   <u>Hockaday v. Colorado Dep't of Corr.</u>, 766 F. App'x 572, 574-75 (10th Cir. 2019)(unpublished).[1]

---

[1]<u>Hockaday v. Colorado Department of Corrections</u> is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

"Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." J.V. v. Albuquerque Pub. Schs., 813 F.3d 1289, 1295 (10th Cir. 2016). "Intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1228-29 (10th Cir. 2009)). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). "The failure to act must be more than negligent and involve an element of deliberateness." J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1228).

"To prove a case of disparate impact discrimination, the plaintiff must show that a specific policy caused a significant disparate effect on a protected group." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George, 685 F.3d 917, 922 (10th Cir. 2012)(citing Reinhart v. Lincoln Cnty., 482 F.3d 1225, 1229 (10th Cir. 2007)). This "is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George, 685 F.3d at 922 (citing Mountain Side Mobile Ests. P'ship

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Hockaday v. Colorado Dep't of Corr., Brown v. Narvais, 265 F. App'x 734 (10th Cir. 2008), and Johnson-Bey v. Ray, 38 F. App'x 507 (10th Cir. 2002), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

v. Sec'y of Hous. & Urban Dev., 56 F.3d 1252 (10th Cir.1995)).   "ADA regulations require public

entities to 'make reasonable modifications in policies, practices, or procedures when the

modifications are necessary to avoid discrimination on the basis of disability.'"   J.V. v.

Albuquerque Pub. Schs., 813 F.3d at 1299 (quoting 28 C.F.R. § 35.130(b)(7)).   Thus, to prevail

on reasonable accommodations claim, a plaintiff must show that they requested an accommodation

or that the need for an accommodation was obvious, but the defendant failed to provide one.   See

J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1299.

### LAW REGARDING TORT CLAIMS AGAINST CORRECTIONS OFFICERS

The State of New Mexico has waived sovereign immunity for specific torts as the New

Mexico Tort Claims Act ("NMTCA") sets forth.   See N.M.S.A. §§ 41-4-4 to -12.   If the NMTCA

does not expressly waive immunity for a particular tort, that tort is not actionable against the State,

its entities, or employees.   See Davis v. Bd. of Cty. Commr's of Dona Ana Cnty., 1999-NMCA-

110, ¶ 31, 127 N.M. 785, 795, 987 P.2d 1172, 1182.   The NMTCA waives immunity in cases

where law enforcement officers engage in particular tortious conduct "while acting within the

scope of their duties."   N.M.S.A. § 41-4-12.   It is well established, however, that corrections

officers who hold convicted persons in custody are not "law enforcement officers" for § 41-4-12's

purposes.   See Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1254-56 (D.N.M 2010)

(Browning, J.); Callaway v. N.M. Dep't of Corrs., 1994-NMCA-049, ¶ 10, 117 N.M. 637, 641,

875 P.2d 393, 397 (affirming the trial court's determination that corrections officers are not law

enforcement officers for § 41-4-12's purposes).

Similarly, N.M.S.A. § 41-4-6(A) waives immunity for liability "caused by the negligence

of public employees while acting within the scope of their duties in the operation or maintenance

of any building, public park, machinery, equipment or furnishings."   See N.M.S.A. § 41-4-6(A).

- 12 -

Section 41-4-6 waiver applies where a defendant's "negligent 'operation or maintenance' . . . create[s] a dangerous condition that threatens the general public or a class of users" on the property in question. Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040, ¶ 8, 140 N.M. 205, 207, 141 P.3d 1259, 1261. The dangerous condition need not be a physical defect. See Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040, ¶ 8, 140 N.M. at 207, 141 P.3d at 1261.

Prison attacks are analyzed under § 41-4-6, and fall into two categories. See Archibeque v. Moya, 1993-NMSC-079, 116 N.M. 616, 866 P.2d 344; Callaway v. N.M. Dep't of Corrs., 1994-NMCA-049, 117 N.M. 637, 875 P.2d 393. The first category involves a risk of harm to a single inmate. See Archibeque v. Moya, 1993-NMSC-079, ¶¶ 6-7, 116 N.M. at 619, 866 P.2d at 346. The Supreme Court of New Mexico in Archibeque v. Moya held that "the 'operation' and 'maintenance' of the penitentiary premises . . . does not include the security, custody, and classification of inmates . . . . Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the [NMTCA]." Archibeque v. Moya, 1993-NMSC-079, ¶ 11, 116 N.M. at 620, 866 P.2d at 348. In other words, the Supreme Court of New Mexico concluded that when the defendant's actions put only the plaintiff at risk, rather than the entire prison population, the plaintiff could not maintain a NMTCA claim. See Archibeque v. Moya, 1993-NMSC-079, ¶ 11, 116 N.M. at 620, 866 P.2d at 348. The second category involves a risk of harm to the entire prison population and is compensable under § 41-4-6. See Callaway v. N.M. Dep't of Corrs., 1994-NMCA-049, 117 N.M. 637, 875 P.2d 393. To state a claim under § 41-4-6, a plaintiff must show that the defendant knew or should have known of the alleged dangerous condition that threatened users on the property. See Kreutzer v. Aldo Leopold High Sch., 2018-NMCA-005, ¶ 61, 409 P.3d 930, 944 (rejecting a NMTCA claim where a student was attacked where there was no evidence that high school parking

- 13 -

lot was a "hot zone" for violence or otherwise dangerous to the student population); Espinoza v. Town of Taos, 1995-NMSC-070, ¶ 14, 120 N.M. 680, 684, 905 P.2d 718, 722 (finding no waiver of immunity under § 41-4-6 where child sustained injury on playground, reasoning that the "negligent conduct" did not create "unsafe conditions for the general public").

## ANALYSIS

The Court dismisses the claims alleged in the Complaint.   The Court begins with Avalos' § 1983 claims.   Second, the Court considers Avalos' ADA and Rehabilitation Act claims.   Next, the Court addresses Avalos' State law tort claims.   Finally, the Court grants Avalos leave to file an amended complaint.

## I.    AVALOS' ALLEGATIONS ARE INSUFFICIENT TO STATE § 1983 CLAIMS.

The Court dismisses Avalos' § 1983 claims.   The Court begins with Avalos' claims under the Eighth Amendment to the Constitution of the United States of America, including his failure to protect claim and his deliberate indifference claim.   Next, the Court considers Avalos' First Amendment retaliation claims.

### A.    AVALOS DOES NOT STATE A CLAIM UNDER THE EIGHTH AMENDMENT.

Avalos does not state a claim under the Eighth Amendment.   The Complaint plausibly raises two Eighth Amendment claims: one for failure to protect and one for deliberate indifference. The Court addresses both claims in turn.

#### 1.    Avalos Does Not State an Eighth Amendment Claim for Failure to Protect.

The Tenth Circuit holds that the objective component of a failure to protect claim may be established where prison officials deliberately attempt to place a prisoner's safety in jeopardy, even if no physical attack results.   See Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir.

- 14 -

1992).   Idle threats of physical harm, however, are insufficient to satisfy this standard.   See Northington v. Jackson, 973 F.2d at 1525; Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").   By contrast, a plaintiff may satisfy the objective component by showing that a prison official told other inmates something about the plaintiff that obviously put the plaintiff at risk.   See Benefield v. McDowall, 241 F.3d 1267, 1271-72 (10th Cir. 2001)(holding that labeling plaintiff a snitch and telling other inmates that plaintiff was a snitch with knowledge of the obvious risk of danger associated with that title violates the Eighth Amendment even though the inmate was never attacked); Brown v. Narvais, 265 F. App'x 734, 735-36 (10th Cir. 2008)(unpublished)(determining that an allegation that defendant disclosed plaintiff's status as a child molester knowing such label would subject the plaintiff to serious bodily harm was sufficient to establish an Eighth Amendment violation even though the plaintiff was never physically attacked); Johnson-Bey v. Ray, 38 F. App'x 507, 510 (10th Cir. 2002)(unpublished)(concluding that a plaintiff's allegations that correctional officer intentionally told another inmate that the plaintiff had tried to set him up for a disciplinary violation in order to place plaintiff in danger stated an Eighth Amendment violation even though no physical injury resulted).

Here, Avalos alleges that Gloria and Trujillo threatened to inform the other inmates that Avalos is a child abuser, but not that they did so.   See Brown v. Narvais, 265 F. App'x at 735-36. Absent an allegation that Gloria and Trujillo told the general inmate population that Avalos is a child abuser, the Court cannot conclude that Avalos and Trujillo failed to protect Avalos' safety. Avalos' allegations that Gloria and Trujillo put his life in danger by blackmailing and blacklisting him do not change the Court's analysis.   See Complaint ¶ IV, at 4.   Those allegations are vague and conclusory and do not demonstrate that Gloria and Trujillo failed to protect Avalos.   For these

reasons, Avalos has not satisfied the subjective component of a failure-to-protect claim.

> **2.      Avalos Does Not State an Eighth Amendment Claim for Deliberate Indifference.**

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 102 (1976).   The objective component of a deliberate indifference claim is met if the deprivation is "sufficiently serious."   Farmer v. Brennan, 511 U.S. at 834.   A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).   The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."   Farmer v. Brennan, 511 U.S. at 834.

Here, Avalos' allegations that Gloria and Trujillo told the medical staff to ignore him when he was "energized" with "schizophrenic feelings" does not satisfy the objective or subjective components of a deliberate indifference claim.   Complaint ¶ V, at 5.   Avalos does not allege that he has been diagnosed with schizophrenia or that the symptoms of his schizophrenic feelings were so obvious that a lay person could recognize that he needed medical attention.   See Hunt v. Uphoff, 199 F.3d at 1224.   Additionally, Avalos does not allege facts showing that any defendant knew of and disregarded an excessive risk to his health or safety arising from his feelings or otherwise.   See Farmer v. Brennan, 511 U.S. at 834.   For these reasons, Avalos has not alleged sufficient facts to state a claim for deliberate indifference.

> **B.      AVALOS DOES NOT STATE A CLAIM UNDER THE FIRST AMENDMENT.**

Similarly, the Court concludes that Avalos does not state a claim under the First

- 16 -

Amendment. Avalos alleges that he filed a grievance against Gloria and Trujillo's treatment, and that, as a result, he was subjected to corporal punishment. See Complaint ¶ VII.E, at 7. Although filing a grievance is a constitutionally-protected activity, the Complaint does not identify what "corporal punishment" Avalos was subjected to or who subjected him to it. Further, the Complaint does not allege specific, non-conclusory facts that connect the corporal punishment to his grievances. In other words, the Complaint does not demonstrate that any corporal punishment which Avalos received was in retaliation for Avalos' grievance. Without specific facts showing the alleged punishment would not have taken place but for a retaliatory motive and specific facts describing the actor and the wrongful conduct, the claim is not viable. See Fogle v. Pierson, 435 F.3d at 1264.

## II.    THE COMPLAINT DOES NOT STATE VIABLE CLAIMS UNDER THE ADA OR THE REHABILITATION ACT.

The Court concludes that Avalos does not state a claim under the ADA or the Rehabilitation Act. The Complaint references the ADA and the Rehabilitation Act. See Complaint ¶ II, at 3. Nevertheless, the Complaint does not contain any allegations relevant to any of the elements of an ADA claim or a Rehabilitation Act claim. If Avalos intends to pursue claims under the ADA and or the Rehabilitation Acts in an amended complaint, he should endeavor to include specific factual allegations that satisfy the requisite elements and legal standards set forth above.

## III.    AVALOS' STATE TORT CLAIMS ARE NOT VIABLE.

In the Complaint, Avalos purports to bring claims for negligence, assault, battery, and intentional infliction of emotional distress. See Complaint ¶ II, at 3. The NMTCA waives sovereign immunity for assault and battery, but not mere negligence or intentional infliction of emotional distress. See N.M.S.A. § 41-4-12. Accordingly, the Defendants are immune from Avalos' negligence and battery claims. See N.M.S.A. § 41-4-12. Even if the Court assumes that

the Complaint's allegations are sufficient to state viable claims for assault and battery, the Defendants in this case are corrections officers and not law enforcement officers.   Accordingly, the waiver of immunity in § 41-4-12 does not apply to their conduct.   See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1254-56.   For these reasons, the Court dismisses all of Avalos' State tort claims.   If Avalos files an amended complaint that includes State tort claims, he should endeavor to abide by the standards set forth above.

## IV. THE COURT GRANTS AVALOS LEAVE TO FILE AN AMENDED COMPLAINT.

Having determined that the allegations fail to state a cognizable claim, the Court dismisses the claims in the Complaint, pursuant to 28 U.S.C. § 1915A(b)(1).   See 28 U.S.C. § 1915A(b)(1). The Tenth Circuit counsels that courts ordinarily should give pro se inmates an opportunity to remedy defects in their pleadings.   See Hall v. Bellmon, 935 F.2d at 1110.   Accordingly, the Court grants Avalos leave to file an amended complaint within thirty days of this Memorandum Opinion and Order's entry.   If Avalos does not file an amended complaint by the deadline, the Court will dismiss the Complaint with prejudice.

**IT IS ORDERED** that: (i) the claims set forth in the Plaintiff's Complaint for Violation of Civil Rights, filed February 18, 2022 (Doc. 1), are dismissed without prejudice; and (ii) Plaintiff Raul Avalos may file an amended complaint within thirty days of this Memorandum Opinion and Order's entry.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Raul Avalos
Hobbs, New Mexico

     *Plaintiff pro se*